UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD JONES and JAMES WHITE, Individuals,

    Plaintiffs,

v.

MARY J. BLIGE, ANDRE ROMMELL YOUNG p/k/a/ DR. DRE, BRUCE MILLER, CAMARA KAMBON, ASIAH LEWIS, LUCHANA N. LODGE, MELVIN BRADFORD, MICHAEL ELIZONDO, UNIVERSAL-MCA MUSIC PUBLISHING, UNIVERAL MUSIC GROUP, IN., & JOHN DOES 1-10,

    Defendants.
_____/

CASE NO. 04-60184

HON. MARIANNE O. BATTANI

**ORDER GRANTING DEFENDANT ANDRE YOUNG'S MOTION TO DISMISS**

Before the Court is Defendant Andre Young's Motion to Dismiss Based Upon Lack of Personal Jurisdiction (Doc. # 76). The Court finds oral argument will not aid in the resolution of this motion. See E. D. Mich. LR 7.1(e)(2). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

**I. STATEMENT OF FACTS**

Plaintiffs, Leonard Jones and James E. White, filed this action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, et seq. Plaintiffs are songwriters and producers. They claim that they composed and own a musical composition entitled "Party Ain't Crunk" and that the song "Family Affair" incorporated and

copied portions of their song without authority from or credit to Plaintiffs. See Compl. at ¶¶19, 20, 24.

Defendant Andre Young is a producer, songwriter, and recording artist, and worked on "Family Affair." Young challenges the Court's exercise of jurisdiction over him. He asserts that he worked on "Family Affair" in Los Angeles, California. Young Decl. at ¶ 2. He adds that he has never resided in Michigan, owns no real property here, and has neither an office nor employees in Michigan. Id. at ¶¶ 2-6. According to Young, his only contacts with Michigan include a visit to perform two concerts in a forty-date tour; and six, short visits over the last five years for the sole purpose of producing musical recordings for Marshall Mathers, p/k/a/ Eminem. Id. at ¶¶ 6, 7.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges the sufficiency of the jurisdictional facts regarding the existence of personal jurisdiction over a defendant. The plaintiff has the burden of establishing the existence of personal jurisdiction. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1151 (6th Cir. 1990). When a court decides whether it has personal jurisdiction on the basis of written submissions alone, the plaintiff "may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise. . .specific facts showing that the court has jurisdiction." Serras v. First Tennessee Bank Int'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If a plaintiff's pleadings and affidavits state the facts with sufficient particularity, a court must ignore contrary assertions by a defendant. Id. at 1215. "Dismissal is proper only if all the specific facts which the plaintiff. . .alleges collectively fail to state a prima facie case for jurisdiction." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).

Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." Id. In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Id. The Court views the facts in the light most favorable to the nonmoving party. Serras, 875 F.2d at 1214.

## III. ANALYSIS

"When a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, as is the case here, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum's] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (quoting Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992)). Because the applicable long-arm statute extends to the limits of the Due Process Clause, and the parties have not addressed whether Young is amenable to service of process, the Court addresses only whether the exercise of personal jurisdiction over Young comports with due process. See e.g. Audi AG and Volkswagon of America, Inc. v. D'Amato, 241 F.Supp.2d 734, 743 (E.D. Mich. 2004).

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992) (noting that a distinction between general and specific jurisdiction exists for the purpose of the due process analysis). General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant

3

even if the action is unrelated to the defendant's contacts with the state." Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989) (internal quotation marks omitted).  Here, there is no contention that the Court has limited jurisdiction over Young, only general jurisdiction.

A review of case law demonstrates that continuous and systematic contacts is a fairly high standard. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (no jurisdiction over a foreign corporation that sent officer to forum for one negotiating session, accepted checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); Cubbage v. Merchent, 744 F.2d 665, 667-68 (9th Cir. 1984) (finding no jurisdiction over defendant doctors despite a significant numbers of patients in the forum, use of the forum's state medical insurance system, and a telephone directory listing including the defendants that reached the forum), cert. denied, 470 U.S. 1005 (1985).  Notably, the Sixth Circuit Court of Appeals rejected a claim that general jurisdiction existed based upon the following contacts between the defendant and the forum state, Ohio: 1) the existence of a prior reinsurance agreement between the defendant and an Ohio company; 2) a prior reinsurance agreement between the parties; and 3) the defendant's participation in a property pool.  Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd., 91 F.3d 790, 793-94 (6th Cir. 1996).  The appellate court concluded that such contacts failed to establish the kind of "continuous and systematic" conduct required to support general personal jurisdiction over the defendant. Id. (citing Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1045-46 (2d Cir.1991) (holding that thirteen business trips of short duration over the course of eighteen months did not constitute "continuous and systematic" solicitation of business in

the state of New York)). Additional facts noted by the court and found insignificant as a basis for general jurisdiction included the length of the relationship with the forum state and that the defendant did not direct its activities toward the forum state in order to enter a contract. See also, Mancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (noting that "[t]he standard for establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be of the sort that approximates physical presence") (quotations and citations omitted).

With these principles to guide the analysis, the Court directs its attention to whether general jurisdiction exits. To satisfy due process, Young's contacts with Michigan must be deemed "continuous and systematic." As evidence of the continuous nature of Young's contacts with Michigan, Plaintiffs rely on contacts beginning in 1996. They allege the following facts in support of general jurisdiction:

> 1. The distribution of music in Michigan by Aftermath Entertainment the record label that Defendant Andre Young founded and owns from 1996 to the present.
>
> 2. Signing and negotiating a long-term recording contract in 1999, with Marshall Mathers, p.k.a. Eminem, who resides in Michigan, which presently remains in effect.
>
> 3. Doing business in Michigan by serving as executive producer, music producer and distributing "The Slim Shady LP," the debut album from Michigan-based rapper Eminem, throughout Michigan from 1999 to the present.
>
> 4. Doing business in Michigan, by serving as executive producer, music producer and distributing "The Marshall Mathers LP," the second album from Michigan-based rapper "Eminem, through Michigan from 2000 to the present.

5.  Doing business in Michigan by serving as executive producer, music producer and distributing "The Eminem Show," the third album from Michigan-based rapper Eminem throughout Michigan from 2002 to the present.

6.  Doing business in Michigan, by serving as executive producer, music producer and distributing "Encore," the fourth album from Michigan-based rapper Eminem throughout Michigan from 2004 to the present.

7.  Doing business in Michigan, by serving as executive producer, music producer and distributing "Curtain Call," the fifth album from Michigan-based rapper Eminem throughout Michigan from 2005 to the present.

8.  Performing two concerts in Detroit and Auburn Hills, Michigan in 2000, as admitted by Defendant Andre Young in his March 15, 2006 declaration. . . .

9.  Availing himself continuously and systematically to the jurisdiction of the U.S. District Court for the Eastern District of Michigan, Southern Division, by filing a Complaint against the City of Auburn Hills on August 7, 2000.  The lawsuit remained pending for over a year until it was settled in September 27, 2001.

10.  Doing business in Michigan and continuously and systematically providing music production services for the Detroit-based recording group "D12" for two songs "Fight Music and "Revelation" of which appeared on the group's album "Devil's Night" released on June 19, 2001.

11.  Availing himself continuously and systematically to the jurisdiction of the U.S. District Court for the Eastern District of Michigan, Southern Division, by filing a Complaint against the City of Detroit on August 14, 2000.  The lawsuit remained pending for over a year until it was settled on October 25, 2001.

12.  Availing himself continuously and systematically to the jurisdiction of the U.S. District Court for the Eastern District of Michigan, Southern Division by filing a Complaint against the City of Detroit on May 2, 2003.  The lawsuit remained pending for 17 months until it was dismissed on October 21, 2004.

13.  Consenting to jurisdiction of the U.S. District Court for the Eastern District of Michigan, Southern Division as a named Defendant in the case entitled <u>Bowens, et al v. Aftermath Entm't.</u>, Case No. 02-40170 which was filed on April 23, 2002, and remained pending until it was settled on March 31, 2005.

> 14. Doing business in Michigan on a continuous and systematic basis on at least 6 occasions between 2001 and 2006, to produce musical recordings for Eminem as admitted in Defendant Andre Young's Declaration.
>
> 15. Entering a contract to do business in Michigan with recording artist/producer Denaun Porter to purchase beats that Defendant Andre Young used on 50 Cents' song "P.I.M.P." released in 2003, and Xzibit's song "Multiply" released in 2002. Denaun Porter is also member of D12, a Detroit-based recording group.
>
> 16. Doing business in Michigan by providing production services for Detroit-based recording group, "D12" for one song "American Psycho II" which appeared on the group's second album D12 World" released on April 27, 2004.
>
> 17. Doing business in Michigan by providing music production services for Detroit-based recording artist Obie Trice for two [sic] songs "Shit Hits the Fan," "Look into My Eyes," and "Oh" featured on his album "Cheers" released on September 23, 2004.

Pls.' Brief at 2-4.

Before addressing the weight given to these allegations, the Court observes that the mere incantation of the phrase "continuous and systematic" does not aid Plaintiffs in meeting their burden. The Court looks to the facts, not Plaintiffs' characterization of the facts. The Court further observes that to the extent that these allegations can be deemed contrary to the Defendant's declaration, the Court credits Defendant's factual account. Plaintiffs have failed to advance competent evidence by way of affidavit or otherwise to support their allegations. For example, Plaintiffs' support for paragraph 1 is based upon a Wikipedia biography of Defendant. It reads in relevant part, "Dr. Dre left Death Row [record label] to form his own Aftermath Entertainment label." Pls.' Ex. A at p. 3. This entry does not create a factual dispute. Young asserts that Aftermath, is a joint venture between UMG Recordings, Inc. and ARY, Inc. ARY, Inc. is a California corporation, owned by

Young.  Therefore, the fact that Aftermath distributes records in Michigan is immaterial to the analysis of jurisdiction over Young.

As for Paragraphs 2-7, 14 and 15, again, they create no genuine issue of fact material to the analysis of jurisdiction.  Mather's recording contract was negotiated and singed in California, as was Denaun Porter's contract.  Young admits to producing albums for Mathers and that he traveled to Michigan on six occasions for that purpose.  His business relationships with Michigan residents does not confer general jurisdiction on this Court.  Nor do his two concert performances in and six visits to Michigan.  Case law simply does not support such a finding.  In this case the Defendant's contacts with Michigan are sporadic, not continuous and not systematic, and certainly less substantial that those rejected by the Supreme Court as a basis to support the exercise of general jurisdiction in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  In that case, the defendant lacked a place of business and a license to do business in the forum, but did "send[ ] its chief executive officer to [the forum] for a contract-negotiating session; accepting checks drawn on a [forum] bank; purchas[e] helicopters, equipment, and training services from a business located in the forum state; and sen[t]  personnel to the [forum state] for training."  Id.  The Court's analysis in Helicopteros Nacionales de Colombia demonstrates that the limited contact Young had with Michigan is not of a substantial nature. Compare Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437 (1952) (finding general jurisdiction proper where "the president of a nonresident defendant corporation had maintained an office in [the forum state] where he kept company files and held meetings. . .carried on correspondence relating to the business, distributed salary checks drawn on two active [forum state bank] accounts, engaged a [forum state] bank to

8

act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties [located outside the forum]").

The Court's conclusion is not altered by Plaintiffs reliance on Young's status as a plaintiff in three law suits instituted in federal court in Michigan or his appearance as a defendant in litigation in the U.S. District Court for the Eastern District of Michigan. See ¶¶ 9, 11-13. That basis as a hook for general jurisdiction has been rejected. See Merlina v. Harrah's Entertainment, inc., No. 05-6660, 2006 WL 401847 at *3, *E.D. Pa. Feb. 17, 2006) (rejecting the argument that the defendant's availment of the state courts on at least nineteen occasions as a plaintiff provided a basis for general personal jurisdiction); Blackwell v. Marina Assoc, No. 05-5418, 2006 WL 573793 (E.D. Pa. March 9, 2006) (noting that the fact that the defendant had pursued legal claims in the state as a plaintiff is immaterial to the issue of jurisdiction).

Finally, the Court rejects the allegation advanced in ¶ 15 as a basis for finding general jurisdiction over Defendant. It is undisputed that Denaun Porter is in a contractual relationship with Aftermath, not Young. Moreover, the contract was negotiated and entered into in California. Young's Suppl. Decl. at ¶ 5. Similarly, although Young admits that he produced two songs for Obie Trice, a Detroit-based recording artist; Young performed the work in Los Angeles, not Michigan. Id. at ¶ 6.

In sum, the seventeen facts listed as evidence of Young's systematic and continuous contact with Michigan, fail as a matter of law, to provide a basis upon which this Court may exercise personal jurisdiction over him for the cause of action upon which Plaintiffs proceed.

**V. CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's request for dismissal.

**IT IS SO ORDERED**.

                               s/Marianne O. Battani
                               MARIANNE O. BATTANI
                               UNITED STATES DISTRICT JUDGE

Dated: May 16, 2006

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon Gregory Reed, Stephanie Hammonds, and Daniel Quick on this date by ordinary mail and/or electronic filing.

                               s/Bernadette M. Thebolt
                               Deputy Clerk