**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LEONARD JONES, JAMES E. WHITE and
DANNIE LONGMIRE,

                 Plaintiffs,             Case No. 04-60184

v.                                    HON. MARIANNE O. BATTANI

MARY J. BLIGE, ASIAH LEWIS, LUCHANA N.
LODGE, UNIVERSAL-MCA MUSIC
PUBLISHING, UNIVERSAL MUSIC GROUP,
INC.

                 Defendants.
_____ _____/

**ORDER GRANTING DEFENDANTS' MOTIONS
<u>FOR SUMMARY JUDGMENT</u>**

      Before the Court are two Motions for Summary Judgment; one filed by

Defendants Universal Music Corp., Songs of Universal, Inc., UMG Recordings, Inc., and

Mary J. Blige ("the "Universal Defendants") (Doc. No. 92) , and one filed by Asiah Lewis

and Luchana N. Lodge (Doc. No. 93).  The Court heard oral argument on the motions

on October 18, 2006, and at the conclusion of the hearing took these matters under

advisement.  For the reasons that follow Defendants' motions are **GRANTED.**

**I.  BACKGROUND**

      Plaintiffs Leonard Jones and James E. White, in conjunction with Intervening

Plaintiff, Dannie Longmire, composed and own a musical composition entitled "Party

Ain't Crunk."  Plaintiffs assert that the song "Family Affair" incorporated and copied

portions of their song without authority from or credit to them.  Plaintiffs bring their claim

of copyright infringement against a record company, performers, musicians, and

songwriters pursuant to the Copyright Act, 17 U.S.C. § 106.

The facts giving rise to the claim follow. Plaintiff's relationship began before Christmas 2000, when White telephoned Longmire and asked for various "beats" to make a demo CD for his client, Tim Acker a/k/a Benevolent.  Defs.' Ex. 2 at 42-44.[1] Id. at 44.  Longmire compiled beats as requested and sent a "Beat CD" to White around Christmas.  In March 2001, Longmire created a musical track entitled "Jack 216," which was used to create "Party Ain't Crunk."  Defs.' Ex. 2 at 59-60, 63-5.  Longmire confirmed that "Jack 216" was not part of the original Beat CD sent in Christmas 2000.  Id. at 95. Acker recorded the Benevolent demo CD between March 13, 2001, and April 6, 2001, when the lyrics created by White and Acker were merged with "Jack 216."  Id. at 58-61.

After the Benevolent CD was completed, White contacted Andy McKaie, an executive for Defendant UMG Recordings, Inc ("UMG"), the record company[2] that released "Family Affair."  In late May 2001, White received permission from McKaie to send the CD.  White subsequently dropped off a package at the guard desk at UMG's facility in Santa Monica, CA, which contained the Benevolent CD and certain promotional materials.  Defs.' Ex. 1 at 62-3.  White testified that he had a follow-up telephone call to McKaie's assistant, Joanne Frederick, in which she informed him that the CD was on McKaie's desk and that McKaie would listen to it after he returned from an out-of-town trip.  Id.  Frederick later told White that UMG decided not to pursue the demo.  White then received his package with a handwritten note from Frederick stating

---

[1]Unless otherwise noted, any reference to Defendants' exhibits refers to the exhibits attached to the Universal Defendants' motion.

[2]Two affiliated music publishing companies that co-published and administer an interest in the song, Universal Music Corp. and Songs of Universal, Inc., are also named as Defendants.

that UMG was not accepting unsolicited ideas.  Id. at 63-5; Ex. 20.  White also testified that his package had been opened because neither the original envelope nor his cover letter was returned.  Id. at 65.

Defendants Asiah Lewis & Luchana Lodge assisted in writing portions of the lyrics to Family Affair.  Defendant Mary J. Blige is the singer/songwriter of "Family Affair."  According to the Universal Defendants, the Album, *No More Drama,* in which "Family Affair" is the second track, was released for commercial sale on August 28, 2001.  The U.S. Copyright office registered it on September 17, 2001.  Defs.' Ex. 9.

Andre Young, who was dismissed from this action for lack of personal jurisdiction, produced the song.  According to Young, he generally goes into the studio and creates "something from thin air until it is done and ready to be presented to the public."  Defs.' Ex. 10 at 9.  He describes his musical works as "foundation tracks."  Id. Once the foundation tracks are recorded, Young looks for an artist who can merge lyrics with his music.  Id.  On September 13, 2000, Young and his musical collaboration team, Michael Elizondo (bass player) and Camara Cambon (keyboards), recorded the "original foundation" for the musical portion of "Family Affair" using a drum beat and a cello sound created by the keyboard.  Id. at 13.  See also Ex. 12, Studio Logs from September 13, 2000, and January 10, 2001; Ex. 13, CD produced by Young with two versions of music that became "Family Affair."  The music, entitled "Fragile" evolved into the music for "Family Affair." Defs.' Ex. 10 at 14.  Young testified that the music from "Fragile" was "almost identical" to the version of "Family Affair" that appears on the album.  Id.   The"driving 8 note beat" used by Young in "Family Affair" has been used in other works he created.  Id. at 16, 17.

3

Young sent the music to Blige, and Blige recorded the lyrics. Defs.' Ex. 16 at 19-20. Blige returned the CD to Young with preliminary lyrics. Young suggested that Blige record a lyrical bridge, which she did in late May or early June 2001. Defs.' Ex. 10 at 24. Young then produced and mixed the version that was finalized for distribution. Defs.' Ex. 10 at 24, 30-31.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the United States Supreme Court has ruled: In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

4

party will bear the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

      The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to  support the nonmoving party's case."  Celotex, 477 U.S. at 325.

      Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v. Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

      "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

## III.  DISCUSSION

The Copyright Act provides protection for original works of authorship, including music. 17 U.S.C. §§ 101-1332.  An owner of a copyright has the exclusive rights (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work.  17 U.S.C. § 106.  To show a violation of the Act, a plaintiff must establish two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361

6

(1991); <u>accord</u> <u>Kohus v. Mariol</u>, 328 F.3d 848, 853 (6th Cir. 2003). The parties do not contest Plaintiffs' ownership of a valid copyright in "Party Ain't Crunk." They contest Plaintiffs' ability to show the second element–that copying occurred.

Because direct evidence of copying seldom is available, a plaintiff may establish "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." <u>Ellis v. Diffie</u>, 177 F.3d 503, 506 (6th Cir. 1999). "Access is essentially 'hearing or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy.' " <u>Id.</u> (quoting <u>Tree Publ'g Co. v. Warner Bros. Records</u>, 785 F.Supp. 1272, 1274 (M.D.Tenn. 1991)).

The Court analyzes the lyrics and music separately. It directs its attention first to the lyrics.

### A. ARE THE LYRICS SUBSTANTIALLY SIMILAR?

Lewis and Lodge move for summary judgment on two grounds: Plaintiffs' admission that the lyrics are not substantially similar and the absence of any genuine issue of material fact as to the substantial similarity. The Court agrees that either basis warrants the requested relief.

#### 1. Admission

Plaintiffs failed to respond to Lewis and Lodge's Request for Admissions. The content of the two admissions before the Court is undisputed. The first admission reads: "Admit that the lyrics to "Party Ain't Crunk" are not substantially similar to the lyrics of the work entitled 'Family Affair.' " The second admission reads: "Admit that Defendants Lewis and Lodge did not have access to the alleged work entitled 'Party

7

Ain't Crunk.' "  See Lewis and Lodge's Ex. K.

Pursuant to FED.R.CIV.P. 36(b), the statements are admitted.  Plaintiffs did not respond to this argument.  The Court therefore finds they have conceded that they are bound by the admissions.

### 2.  Substantial similarity

Above and beyond Plaintiffs' admissions, Lewis and Lodge maintain that a comparison of the lyrics shows as a matter of law that they are not substantially similar and that no reasonable juror could find that Plaintiffs' work was copied.  There are only a few words that both songs share: crunk, door, floor, spot, life, dime, mine and time, and they do not appear at similar points in the songs.  See Lewis and Lodge's Exs. E and F.

In considering the merits of this argument, the Court is mindful that the protection sought by Plaintiffs extends only to expression of ideas and not to ideas themselves. 17 U.S.C. § 102(b) "[N]o author may copyright facts or ideas.  The copyright is limited to those aspects of the work--termed "expression"--that display the stamp of the author's originality."  Feist Publ'ns, 499 U.S. at 350, 111 S.Ct. at 1290 (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547 (1985)) (internal quotation marks omitted).  After filtering out the unprotectible elements such as setting of a dance club or unprotectible phrases and cliches, the Court must determine whether the allegedly infringing work is "substantially similar" by comparing the two works.  Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984).  Substantial similarity exists where "the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated

8

the plaintiff's protectible expression by taking material of substance and value." Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1288 (10th Cir. 1996) (internal quotation marks and citation omitted).  Here, the lyrics contain a few words in common, but there are scattered randomly throughout the works.  Further, the themes underlying the lyrics are different.  "Family Affair" directs partygoers to leave their troubles at the door and dance.  In contrast, "Party Ain't Crunk" covers sexual exploits and acts of violence.

Admittedly summary judgment in favor of a defendant in a copyright case is a practice that should be used sparingly; however, this is an appropriate case.  "A court may compare the two works and render summary judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984) (citations omitted); accord Kohus, 328 F.3d at 853.  The Court finds that the lyrics are not substantially similar as a matter of law.

Plaintiffs' submission of the August 16, 2006, survey by Afan Bapacker, in which he found that 68% of the people surveyed thought the lyrics were "Moderately Similar" does not alter this Court's conclusion.  The standard is substantial similarity and there is no evidence before the Court that the lyrics were compared in accordance with the procedures articulated by governing case law.  Equally unavailing are the hearsay statements that various associates of White indicated that the songs were similar, including an attorney, and Acker, coauthor of "Party Ain't Crunk." See Pls.'s Ex. F, Dep. of James E. White at 82, , 83-5.

Accordingly, the Court GRANTS Lewis and Lodge's request for summary

9

judgment.

### B.  ACCESS TO MUSIC

In contrast to Lewis and Lodge's argument, the Universal Defendants focus on the access prong of Plaintiffs' proofs.  In this case, the issue is whether Defendants had a reasonable opportunity to hear Plaintiffs' music and consequently an opportunity to copy.  Tree Publ'g Co. v. Warner Bros. Records, 785 F.Supp. 1272, 1274 (M.D.Tenn. 1991).  "The relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa."  Stromback v. New Line Cinema, 384 F.3d 283, 294 (6th Cir. 2004) (citing Ellis, 177 F.3d at 507).

Universal Defendants are correct that Plaintiff cannot establish access merely because White left music at UMG.  See Jorgensen v. Epic/Sony Records, 351 F.3d 46, 53 (2d Cir. 2003) (holding that a "[b]are corporate receipt of [the plaintiff's] work, without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access");  Tisi v. Patrick, 97 F.Supp.2d 39, 547-48 (S.D.N.Y. 2000) (finding no proof of access where the plaintiff alleged that the sent tapes to record companies, including the company that released records containing the allegedly infringing song, but there was no evidence that plaintiff's song was conveyed to anyone with creative input into the allegedly infringing song).  In this case, however, Plaintiffs are situated somewhat differently:  the CD sent to McKaie was not unsolicited; and, White had subsequent contact in which he was assured that McKaie would listen to the CD.  Pls.' Ex. K at 63.  Further, UMG had Plaintiffs' CD in May, a few months before the release of *No More Drama*, a time frame in which Blige and Young were

10

finalizing the song.  Accordingly, the Court considers the nexus between McKaie and those individuals who worked on "Family Affair."

In Towler v. Sayles, 76 F.3d 579, 583 (4th Cir. 1996), the court observed that an inference may be drawn that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer.   An intermediary will fall within this category, for example, "if she supervises or works in the same department as the infringer or contributes creative ideas to him."  Id.  See also  Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 944 (8th Cir. 1992) (finding access where intermediary was "in a position to provide suggestions" to the alleged copiers); Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 354 (4th Cir.) (jury could infer access where intermediary with access to plaintiff's drawings had "a close relationship to the alleged infringers"), cert. denied, 532 U.S. 1038 (2001); Tomasini v. Walt Disney Co., 84 F.Supp.2d 516, 522 (S.D.N.Y. 2000) (finding no relationship between recipient of plaintiff's work and alleged infringers).

In this case, Plaintiffs suggest the existence of an intermediary relationship based on the following facts.  McKaie and Frederick are employed in the catalog division of UMG, which deals with the reissue of previously released sound recordings, i.e., greatest hits albums.  Defs.' Ex. 16, McKaie Decl. Ex. 21 at ¶¶ 3, 4.  The *No More Drama* album contains a sample of "Nadia's Theme," music that Plaintiffs' assert had to be cleared through UMG's catalog department.

Plaintiffs' theory is based on sheer speculation.  They have failed to advance any evidence to support the inference that UMG employees, McKaie and/or Frederick, passed the Benevolent CD to any member of the team that created "Family Affair."

11

Each Defendant denied the necessary link.  See  Defs.' Ex. 21 at ¶¶ 5, 6; Defs.' Ex. 22 at ¶¶ 3 and 4; Defs.' Ex. 10 at 15; Defs.'Ex. 16 at 31.  Moreover, Plaintiffs lack any evidence of a close relationship linking the intermediary (McKaie or Frederick) and the alleged copiers, Young and Blige.   The facts, therefore, are distinguishable from any case upon which Plaintiffs rely.

Specifically, in contrast to those cases in which access had been found reasonably possible, here, there is no individual in a position to provide suggestions or comments with respect to Defendants' work–no supervisory employee or an employee within the unit from which Defendant's work was developed that had the opportunity to hear Plaintiffs' work.  See Jorgensen, 351 F.3d at 54 (reversing the lower court's award of summary judgment to the defendants based upon their admission that during the relevant time period, that "on limited occasions, writers, producers or musicians affiliated with the company may have been shown some material solicited by the department"); Kamar Int'l, Inc. v. Russ Berrie and Co., 657 F.2d 1059, 1062 (9th Cir. 1981) ("'evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant' " (quoting 3 Nimmer on Copyright § 13.02[A] at 13-11 (1981))); Sanford v. CBS, Inc., 594 F.Supp. 711, 713 (N.D.Ill. 1984) (summary judgment for the defendant not appropriate where the defendant expressed interest in the plaintiff's song, requested to retain a copy of song, and mailed copy to Los Angeles office where alleged copier could have heard it); Nordstrom v. Radio Corp. of Am., 251 F.Supp. 41, 42 (D.Col. 1965) (summary judgment for the defendant not appropriate because the plaintiff's work was in the defendant's files during a period in which alleged copier could have accessed

12

those files).

In sum, the facts of this case are more analogous to those in Meta-Film
Associates, Inc. v. MCA, Inc., 586 F.Supp. 1346, 1355 (C.D.Cal. 1984), wherein the
district court concluded that access could only be established through a "tortuous chain
of hypothetical transmittals," insufficient to demonstrate access.

In the alternative, Plaintiffs advance an argument that because "Party Ain't A
Party," also created by Longmire, was released prior to the creation of "Family Affair"
their burden to show access is met. There is no case law supporting their suggestion of
imputed access from "Party Ain't A Party" to "Party Ain't Crunk "  Both Jones and
Longmire confirm that the two songs are not similar, see Defs.' Ex. 3 at 24; Defs.' Ex. 2
at 61, and Plaintiffs have neither legal authority nor a factual basis to support their
theory.  The Court therefore declines to find any genuine issue of material fact
supporting imputed access.

Finally, the Court finds Universal Defendants have met their burden to show
"Family Affair" was created independently.  Young created the music at the earliest in
September 2000, at the latest January 2001, before Plaintiffs' song existed.  Although
the evidence shows Blige recorded the bridge after Plaintiffs' created "Party Ain't
Crunk," there is no evidence that the music did not remain substantially the same.
Under Sixth Circuit authority, the presumption of copying may be unequivocally rebutted
by showing evidence of "independent creation" of the allegedly infringing work.  Fogerty
v. MGM Group Holdings Corp., 379 F.3d 348, 352 (6th Cir. 2004).  Because
independent creation is established as a matter of law, similarity is not relevant to the
Court's analysis.

13

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** both motions.

**IT IS SO ORDERED.**


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED: November 17, 2006

### CERTIFICATE OF SERVICE

A copy of this Order was e-filed and/or mailed to counsel of record on this date.


s/Bernadette M. Thebolt
DEPUTY CLERK

14